(No. 36586.—

New York Life Insurance Company, *vs.* Lillian Rak.
—(Helen Bernotes, Appellant, *vs.* John E. Owens,
Admx., Appellee.)

*Opinion filed January 23, 1962.—Rehearing denied March 22, 1962.*

Hoffman & Davis, David M. Krichiver, and Crow-
ley, Sprecher, Barrett & Karaba, all of Chicago, for
appellant.

McKinley & Price, of Chicago, (Paul E. Price, of
counsel,) for appellee.

Mr. CHIEF JUSTICE HERSHEY delivered the opinion of the court:

This case comes to us upon the granting of a petition for leave to appeal from a decision of the Appellate Court, First District; which affirmed in part and reversed in part and remanded, with directions, a decree of the superior court of Cook County.

The New York Life Insurance Company filed an interpleader suit wherein the proceeds of two policies of life insurance upon the life of Joseph Rak were deposited with the clerk of the court to be paid as the court should direct. The complaint set up that the rival claimants were Lillian Rak, widow of the insured, in the capacity of administratrix of his estate, and Helen Bernotes, sister of the insured. Lillian Rak later intervened in her own behalf, and John E. Owens was substituted as special administrator of the estate of the deceased insured.

The facts are relatively simple and, for the most part, undisputed. Joseph Rak, on September 29, 1957, executed an application for insurance with the New York Life Insurance Company in the amount of $75,000. In the application, he directed that the beneficiaries were to be: "Helen Bernotes, my sister, and Moneta Turek, my sister, equally."

The insurance company issued two policies of insurance. One policy was issued in the face amount of $50,000 on November 1, 1957, and the other in the face amount of $25,000 on November 13, 1957. Each policy designated as beneficiaries: "Helen Bernotes and Moneta Turek, sisters of the insured, share and share alike, or the survivor." Each of the policies provided: "Unless otherwise provided in this policy or in a beneficiary designation in effect under the policy, (a) if any beneficiary dies before the insured, the interest of that beneficiary will vest in the owner * * *." Each policy had attached thereto a copy of the application, and the application was, by express terms, made a part of the policy.

At the time he took out the policies, the insured was unmarried. He married Lillian Rak on August 30, 1958. He died on November 13, 1958. Moneta Turek, one of the insured's sisters, predeceased the insured, having died November 28, 1957.

Owens, as special administrator of the estate of the insured, filed a counterclaim praying that the policies be reformed to conform with the application as to beneficiaries.

The trial court entered a decree finding the surviving sister, Helen Bernotes, entitled to the entire proceeds of the policies. The Appellate Court affirmed the decree insofar as it directed one-half the proceeds to be paid to Helen Bernotes, but, as to the other one-half of the proceeds, it reversed the decree and remanded the cause, with directions that the policies as written be reformed to read that the beneficiaries are Helen Bernotes and Moneta Turek, sisters of the insured, equally, and that one-half of the proceeds be paid to John E. Owens as special administrator of the estate of Joseph Rak, deceased.

The appellant here, Helen Bernotes, the surviving beneficiary, argues that, even if the policies were reformed to employ the exact language of the application, the surviving beneficiary would be entitled to the whole proceeds, but we regard this argument as untenable. Each policy contains a clause to the effect that, if any beneficiary dies before the insured, the interest of that beneficiary will vest in the owner, unless otherwise provided in the policy or a beneficiary designation in effect thereunder. The beneficiary designation in the application, since it has no survivorship clause, does not provide otherwise. Thus, if the beneficiary designation of the policy were identical with that of the application, it is clear that the estate of the insured is entitled to the one-half of the proceeds that would have been payable to Moneta Turek had she survived the insured.

We have, then, a case where the beneficiary designation in the application would lead to one result and that in the

policy to another, and the question is which designation should be given effect in the present case. Appellant, relying on *Metropolitan Life Insurance Co.* v. *Whitler*, (7th cir.) 172 F.2d 631, argues that the application is not the contract but a mere offer or proposal for a contract of insurance, and that, where an insurance company tenders a policy at variance with the application, the tender constitutes a counteroffer, and, upon acceptance by the insured, the policy becomes a contract between the insured and the insurance company. It is, of course, true, that, until accepted by the company, the application was merely an offer or proposal. Here, however, the application was accepted and the policies were issued. A copy of the application was attached to each of the policies, and each policy expressly provided that the application should be a part of the policy. Under these circumstances, the application, when accepted, became more than a mere offer, and must be construed together with the policy as part of the entire contract. 22 I.L.P., Insurance, sec. 146; *Treat* v. *Merchants' Life Ass'n*, 198 Ill. 431.

As applied to the present case, appellant's argument that the policies constituted a counteroffer which was accepted by the insured, involves two unwarranted assumptions: first, that the company did not accept the insured's beneficiary designation and intended to make a counteroffer with respect thereto, and, second, that the insured accepted the change made by the company. Neither assumption finds support in the record. A reading of the entire policies, including the application, dispels any notion that the company intended by this change to make a counteroffer.

The application contained a provision wherein it was mutually agreed that "Applicant's acceptance of any policy issued on the application shall constitute a ratification of * * * any amendments and corrections which the Company makes and refers to under item 25 above in connection with the issuance of the policy." By this provision, it was clearly contemplated that in some instances the company

might issue a policy at variance with the literal terms of the application, but that, if it did so, the company would note such changes under item 25 of the application and that changes so noted would become binding upon the insured upon his acceptance of the policy. Thus, if the company intended not to accept the application as written with respect to the designation of beneficiaries but to make a counteroffer in this regard, it would have done so by indicating the change under item 25 of the application. This was not done. The only change noted by the company under item 25 was that, instead of one policy for $75,000, it was issuing two policies, one for $50,000 and one for $25,000. It seems clear that, except for those changes noted under item 25, the company intended to write the policies in accordance with the terms of the application, and that the discrepancy with regard to the designation of beneficiaries was a mistake on the part of the company and did not constitute a counteroffer.

Appellant argues that retention of the policies by the insured and payment of the periodic premiums are evidence that the insured accepted the policies as delivered. However, as indicated in the preceding paragraph, while acceptance of the policies constituted ratification by the insured of any changes noted under item 25 of the application, the mere acceptance of a policy containing departures from the application not noted under item 25 does not constitute ratification of the change, particularly in the absence of any evidence that the insured knew of the discrepancy and acquiesced in it. In this respect, the present case differs from *Metropolitan Insurance Co.* v. *Whitler,* 172 F.2d 631, where the decision was in favor of the person designated as beneficiary in the application. In that case, however, in stating the facts which the opinion characterized as "undisputed," the court said that the insured "was fully aware that appellee was named as beneficiary in the policy and accepted the policy with knowledge that appellee was so

named as beneficiary." The court concluded that even if the insured "did originally intend that appellant should be the beneficiary, by his acceptance and retention of the policy it must be presumed that he changed his mind and concluded to accept the contract tendered by the insurer." The situation here is entirely different. Here there is no evidence that the insured knew that the designation of the beneficiary in the policies differed from the application. By the terms of the application, he was entitled to assume that the policies would comply with the application except in such respects as might be noted under item 25. Since nothing was entered under item 25 with regard to beneficiaries, he was entitled to assume that the policies corresponded with the application in this respect, and the mere fact that he accepted the policies and paid premiums thereon does not constitute a ratification of the error of the insurance company.

In contracts of life insurance, where the insured and the insurance company are the contracting parties, the intent of the insured as to who the beneficiary shall be is the intent to be determined. (*Mutual Life Insurance Co.* v. *Devine,* 180 Ill. App. 422.) The intent of the insured was set forth in the application, and there is no evidence that he ever changed his intent as expressed therein. Although the insurance agent who assisted the insured in preparing the application was called as a witness with respect to what the insured understood with respect to the beneficiary designation in the application, his testimony was so confused and contradictory as to be absolutely worthless. Thus, even if the designation in the application were held to be ambiguous so as to justify resort to extrinsic evidence to discover the real intention of the insured, there is no credible extrinsic evidence in the record.

Appellant also contends that the insured contemplated possible beneficiary changes, but had not executed any change of beneficiary before his death and argues that this indicates that he was satisfied with the beneficiary provision

as written. The only evidence in this regard is that, following the insured's marriage in August, 1958, the insurance agent suggested the changing of the beneficiary provisions of the policies to make the insured's wife the beneficiary, but that the insured, presumably because of procrastination, never executed any change of beneficiary. In all of this, however, there is no evidence that the insured knew that the policies differed from the application or that he ever intended the beneficiaries to be other than stated on the application.

Appellant also relies upon the presumption that a written instrument expresses the intention of the parties and that the burden rests upon the party seeking reformation to prove by clear and convincing evidence that the instrument did not express the intention of the parties. This argument assumes that the instrument that is being construed is the policy itself without the application. Here, however, the contract is not the policy without the application, but a policy of which the application is an integral part. Construing this contract as a whole, and giving due effect to the provisions of the application, we have concluded, for the reasons stated above, that the Appellate Court reached the correct result in determining that one half of the proceeds· of the policies should be paid to the special administrator of the estate of Joseph E. Rak, deceased.

The judgment of the Appellate Court, First District, is affirmed.

*Judgment affirmed.*