## CIRCUIT COURT OF BOTETOURT COUNTY

Barbara F. Drumwright et al.

v.

State Farm Mutual Automobile
Insurance Co.

June 6, 1978

Case No. 1137

By JUDGE ROSCOE B. STEPHENSON, JR.

The Plaintiffs, heirs at law of William B. Drumwright (the insured), seek to recover under certain provisions of a standard automobile liability insurance policy issued by the defendant (State Farm) the sum of $10,000 for the death of the insured and the sum of $1,300 for damage to the insured's automobile, both of which resulted from an automobile accident which occurred on March 14, 1974.

The issue to be decided is whether State Farm, by the acts of its agents and employees, waived its right to deny its coverage was in force on March 14, 1974, the date of the accident.

The facts of this case are not disputed. The insured had carried a policy of insurance, similar to the one in issue, with State Farm for a number of years. On a number of occasions (at least three and probably more) he had failed to pay the required premium on or before the due date, and on each of the occasions, upon receiving the late premium, the policy was extended for an additional six-month period with no lapse in coverage. The evidence fails to disclose, however, whether these payments, or any of them, were made after the ten-day grace period as provided for in the policy.

The policy in issue (No. 4783 257 B29 46F) was in effect until February 28, 1974, or "for such succeeding periods of six months each thereafter as the required renewal premium is paid by the insured on or before the expiration of the current policy period." On or about January 28, 1974, State Farm mailed to the insured a premium notice showing a premium in the amount of $236.40 due on February 28, 1974. The insured failed to pay this premium by the due date, and thereafter State Farm mailed to the insured an expiration notice which informed him that his policy had expired and which further provided that:

> Payment within 10 days after Expiration Date reinstates this policy as of the Expiration Date for 6 months. If paid thereafter you will be advised if payment has been accepted for reinstatement.

The insured did not pay the premium within the ten-day grace period.

On March 14, 1974, the insured was involved in an automobile accident while operating one of the automobiles listed on the insurance policy (a 1971 Fury III) and he died at about 11:20 P.M. on that date from injuries sustained in the accident.

Barbara F. Drumwright, widow of the insured and one of the plaintiffs, learned of her husband's death in the early hours of March 15, 1974, and on that date (which was more than ten days following the expiration of the policy) she mailed to State Farm a premium payment. This payment was by a check dated March 9, 1974, in the amount of $180.40, and the check was accompanied by the aforesaid expiration notice on which Mrs. Drumwright had written: "cancel on '69 Mustang." She did not request that coverage should be altered in any other respect. These documents were mailed to State Farm's Charlottesville office.

On March 18, 1974, Mrs. Drumwright notified Bill Long, a State Farm agent at Roanoke, of her husband's death.

State Farm held the premium check until April 4, 1974, and on that date said check was deposited in its bank account. According to Orrin A. Larson, Service Superintendent for State Farm, the company kept the check because

there was a request for a policy change (i.e., "cancel on '69 Mustang"), and that where there is such a request the check is deposited in the bank at the same time the information regarding the requested change is fed into a computer. Several days later, the computer reported that a rebate in the amount of $17.50 was due for the period of time the policy was not in force (i.e., February 28, 1974, to March 16, 1974). Thereafter, a new policy was issued in the name of the insured (Policy No. 4783 257 B29 46G) which showed the policy period as commencing March 16, 1974. This policy and the check for $17.50 were sent to Bill Long, the Roanoke agent, who, in turn, delivered the same to Mrs. Drumwright. This check was negotiated by Mrs. Drumwright under the endorsement "William B. Drumwright by Mrs. W. B. Drumwright." Mrs. Drumwright did not remember receiving this check, but later, after it was exhibited to her, she said that she had thought it represented a property damage payment for an accident her husband had experienced in Covington the previous winter. State Farm had no record of paying any such property damage.

From the undisputed facts, it is apparent that the insurance policy in question expired on February 28, 1974. Had the required premium been paid within ten days thereafter, the policy would have been reinstated as of the expiration date. Payment within the ten-day period was not made, and, therefore, coverage was terminated (i.e., it expired) on February 28, 1974. There was no insurance coverage at the time the loss occurred on March 14, 1974.

The plaintiffs contend, however, that under the facts of this case State Farm is either estopped, or has waived its right to deny coverage at the time of the accident.

At the time Mrs. Drumwright paid the premium, the policy had expired and the accident had occurred. Her premium check, therefore, was no more than an application for a new insurance policy. It was an offer to purchase which State Farm rejected. It defies all reason and logic to infer from the evidence presented that State Farm knowingly and intentionally agreed to reinstate an expired policy, by accepting a payment of $180.40, and to thereby incur liability for a claim in the amount of $11,300. To draw such a conclusion borders on the absurd.

A case quite similar to the instant case is *Forrester v. State Farm Mutual Insurance Company*, 103 S.E.2d 619 (Ga. 1958). In that case an automobile collision policy expired due to nonpayment of premium prior to the property loss. Thereafter, the insured reported the loss to an agent of the insurer and attempted to reinstate the policy by forwarding a premium payment to the home office of the insurer without informing the home office of the loss. The insurer retained a portion of the premium, reinstated the policy from the date of payment and attempted to refund a portion of the premium covering the period from the expiration date to the date of later payment. The court held that such an acceptance of premium payment was not a waiver by the insurer as would constitute a reinstatement of the policy retrospectively during the time in which the loss occurred, although insured was not notified of the limited prospective reinstatement until two months after late premium payment.

A contrary holding, relied upon by the plaintiffs, is *Van Hulle v. State Farm Mutual Insurance Co.*, 99 Ill. App. 2d 378, 241 N.E.2d 320 (1968), affd. 44 Ill. 2d 227, 254 N.E.2d 457 (1969).

"Waiver, a doctrine at law, is voluntary action or inaction with intent to surrender a right *in esse* with knowledge of the facts and circumstances which gave birth to the right." *Employers Insurance Co. v. Great American*, 214 Va. 410, 412, 200 S.E.2d 560, 562 (1973). In the present case State Farm had the undisputed right to claim that there was no coverage (no insurance) for the accident which occurred after the policy expired. Holding Mrs. Drumwright's check for approximately three weeks and thereafter depositing it, are not actions which indicate an "intent to surrender a right *in esse* with knowledge of the facts and circumstances which gave birth to that right." And this is particularly so when all of its actions are considered. As soon as "the facts and circumstances which gave birth to that right" were known to State Farm, it issued a new policy effective March 16, 1974 (thereby expressly excluding the period following the expiration date during which the accident occurred) and sent a rebate to Mrs. Drumwright for the excluded period. The essence of waiver is *intent*, and the court finds nothing from the evidence in this case which indicates an intent on the part of

State Farm to surrender a known right. Its intent was totally to the contrary.

In *Hodge* v. *National Fidelity Insurance Co.*, 68 S.E.2d 636 (S.C. 1952), the insurer wrote the insured, more than a month after the policy had lapsed, that the policy was "in danger of being cancelled" and that the grace period "has almost expired." In holding that the insurer had not waived expiration of the policy, the court said:

> But there is no basis in this case for a claim of estoppel and we do not think that the doctrine of waiver has any application. As we have heretofore pointed out, the contract under consideration is not for an indefinite term like the ordinary life insurance contract under which the insurer is bound to accept timely payment of the premiums, but is a contract for a definite term. We do not have a situation where the insurer is asserting a forfeiture by reason of some condition in the policy. The insurer here denies that there was a contract of renewal. There must be a contract before there can be a forfeiture. What respondent is really seeking is not to prevent a forfeiture but to make a new contract. The doctrine of waiver "cannot be successfully invoked to create a primary liability, or a liability for a benefit not contracted for at all." 45 C.J.S., *Insurance*, § 674, p. 617. As stated in *Jones* v. *New York Life Insurance Co.*, 69 Utah 172, 253 P. 200, 203: "The theory of the waiver of the terms of a contract must necessarily presuppose the existence of a valid contract. Unless and until a contract exists between the contracting parties it would seem to be illogical to contend that either party can be said to have waived any of the terms or requirements of the contract." 68 S.E.2d at 640.

"Estoppel, as a doctrine in equity, is the consequence worked by operation of law which enjoins one whose action or inaction has induced reliance by another from

benefiting from a change in his position at the expense of the other." *Employers Insurance Co.* v. *Great American, supra*, 214 Va. 412, 200 S.E.2d 562 (1973). Estoppel is sometimes called "implied waiver," or "estoppel by waiver."

Estoppel (i.e., implied waiver as opposed to a true waiver, where knowledge and intent are controlling) cannot operate to create coverage where no coverage exists. *Norman* v. *Insurance Company*, 218 Va. 718, 723, 239 S.E.2d 902, 907-908 (1978); *Sharp* v. *Richmond Life Insurance Co.*, 212 Va. 229, 233, 183 S.E.2d 132, 135 (1971).

In *Norman* the court said:

> The case here is one in which there is no coverage - no insurance. It is not a question of whether a company waived a breach of condition, such as the noncooperation of the insured. For Norman to recover coverage must be created where no coverage was provided. Or, stated differently, the court must bring into being a contract of insurance where there was none. 218 Va. at 728, 239 S.E.2d at 907-08.

In *Norman* the court quoted with approval the following from *Insurance Co.* v. *Atlantic National Insurance Co.*, 329 F.2d 769, 775 (4th Cir. 1964):

> "As was pointed out by the court below, it is the general and quite well settled rule of law that the principles of estoppel and implied waiver do not operate to extend the coverage of an insurance policy after the liability has been incurred or the loss sustained." 218 Va. at 729, 239 S.E.2d at 908.

In *Mallard* v. *Hardware Indemnity Insurance Co.*, 216 S.W.2d 263 (Tex. 1948), an automobile collision policy expired before the automobile was destroyed and the court held that the policy could not be enforced on any theory of estoppel on the ground that the insured paid the premium on a renewal policy after the loss. There the court, quoting from another case, made the following observations:

"Property in esse. . . is the basis of a contract of or for. . . insurance. A substantial element is the chance of loss. If either thing be absent (i.e., if there be no property originally or chance of loss be precluded by the certainty incident to pre-occurring fire), the insurance company is in the absurd position of freely offering to pay a large and certain sum (here $10,500) if the insured will pay to it the comparatively insignificant amount of the premium (here, $341.20). . . . When good faith of both parties is assumed and the property does not exist, there is a mutual mistake of fact as to the very subject-matter of the agreement; if the insurer acts in good faith, but the insured knows of the previous destruction, there is present avoiding fraud . . . ."

Therefore, the court holds that:

1. The contract of insurance expired February 28, 1974;

2. The doctrine of waiver is not applicable because:

    (a) the evidence fails to prove knowledgeable intent on the part of the insurer, but, on the other hand, proves the contrary, and

    (b) a contract must be in existence before any of its terms can be waived;

3. The doctrine of estoppel (implied waiver) cannot be invoked to create insurance where none exists or to extend coverage after the loss is sustained; and

4. There being no contract of insurance (coverage) at the time of the accident (loss), judgment shall be entered for State Farm.